UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
------------------------------------------------------------ X

UNITED STATES OF AMERICA

            -against-                          22 CR 33 (OAW)

LAUREN KNOX,

                Defendant.             February 28, 2023

------------------------------------------------------------ X

## SENTENCING MEMORANDUM OF LAUREN KNOX

      Lauren Knox respectfully submits this memorandum in advance of her sentencing. Lauren submits that when the Court considers all of the relevant facts—including her lack of a criminal record, her familial responsibilities, the aberrational nature of her conduct, and her post-offense rehabilitation—it should impose a non-incarceratory sentence. A sentence, in the range of time served or home confinement, will serve the goals set forth in 18 U.S.C. Section 3553(a).

      For a ten-month period, Lauren made the ill-conceived decision to participate in the instant offense. She is not the mastermind of the fraud, nor did not have a leadership role. The criminal conduct at issue is not the sum total of Lauren's life and it is extremely unlikely to repeat itself in the future. Lauren has accepted responsibility for her conduct and feels true remorse for her participation in the instant offense.

      Lauren is a fundamentally good woman who exercised poor judgment. She had never before been in trouble with the law. As noted by the Probation Department as a basis for a downward variance, "Ms. Knox has repeatedly been the victim of abuse, is the primary care and

financial provider for three minor children, has consistently maintained employment for two decades, and has continued to make efforts toward educating herself by enrolling in college while on bond." PSR at ¶ 97. Ms. Knox respectfully requests that the Court impose a sentence that incorporates the maximum amount of leniency possible – only then will the result be "sufficient but not greater than necessary," to meet all of the sentencing goals embodied in 18 U.S.C. § 3553(a).

I. BACKGROUND

A. Lauren Knox's Personal History

Lauren was raised in a lower-income household in West Haven, Connecticut. Her parents divorced when she was eight years old. After her father remarried a few years later, her relationship with him grew estranged because his new wife was not accepting of his children.

When Lauren was 11 years old she faced trauma that no child should have to endure. Her brother and his friend (14 years old) repeatedly raped her over a period of one year. The boys threatened Lauren that she could not tell anyone, and for years, she did not. She kept this horrible secret to herself. The abuse, however, did not end there. When she was 12 years old, her mother remarried. At age 16, her stepfather began to touch her inappropriately. Although the abuse was reported to the police, there was never an arrest. While Lauren saw a therapist for a period of one year after this, the therapist oddly told Lauren to pretend that what her stepfather did to her was just a dream. Lauren describes the experience as "terrible therapy." Id. at ¶ 55.

Lauren has a strong work ethic and has been working since she was in high school. While attending school, she was a pharmacy technician at Silver's Pharmacy in West Haven. After graduating from Sacred Heart Academy in Hamden, Connecticut in 2002, she attended Southern Connecticut State University for two years. While in college, she continued to work at

1

Silver's Pharmacy until she secured employment as a pharmacy technician at Rite Aid, where she worked from 2004 to 2008.

In 2004, when she was 20 years old, Lauren became pregnant with her first child, Rachel, who is currently a senior in high school. As a result, she dropped out of college. She was married to the father of the child from 2005 to 2009. They had a second child, Isabella, in 2006, who is currently a sophomore in high school. The marriage was not an easy one, as her husband was abusive, both verbally and physically. The verbal abuse was daily and included threats to their infant child. On one occasion, after finding wet towels in the dryer, he slapped Lauren and their daughter began to cry. When Lauren picked up the baby to comfort her, he threatened to hurt them both. The two separated in 2008 and Lauren has had no contact with him since then. While her two daughters initially maintained contact with their father, he began to miss important events, and they have not had contact with him for the last five years. Lauren and her daughters attempted family counseling, but the father would not attend.

After her divorce, Lauren was in another abusive relationship, with a very manipulative individual. See PSR at ¶ 47. They were together for approximately four years. In 2018, Lauren met her now-husband and co-defendant, Michael DiMassa. In May 2022, they had their first child together, a son named Enzo. As of the date of this submission, Lauren is four months pregnant with their second child.

Throughout her turbulent life and abusive relationships, Lauren continued to work and went to school to better herself. From 2007 to 2009, she worked as an assistant chiropractic therapist/medical; assistant/billing employee for Back to Health of Branford in Branford, Connecticut. From 2009 to 2011, Lauren worked as a receptionist for Internal Medicine of Milford. In approximately 2010, she completed a medical billing and coding course at Penn

2

Foster College. She also obtained certifications as a professional coder and an outpatient coder. Since 2011 to present, Lauren has worked for New Haven Health Services in medical coding. Since Spring 2022, Lauren has been enrolled online in a health information management Associate's Degree Program at Penn Foster College. As Probation concluded, "Ms. Knox has established a successful career in medical billing and continues to educate herself with hopes of advancement." PSR at ¶ 105.

While generally healthy, Lauren has previously suffered from depression and suffered postpartum depression after all three pregnancies. See PSR at ¶ 54.

As relayed to Probation, Lauren is "kind-hearted" and "has always been a reliable, true friend." Id. at ¶ 49. She is also a "wonderful mother" who "shares a close relationship with her children." Id. at ¶¶ 37, 49. Lauren has also been a volunteer cheerleading coach and coordinator for ten years, and also assisted with Elks Lodge sponsored events, including handing out water during marathons and 5K races. Presently, Lauren volunteers cleaning gravestones at the local cemetery.

**B.    The Offense Conduct**

In 2021, Lauren's husband asked her to deposit checks for him. Over a ten-month period, Lauren deposited checks into her account, often keeping a small portion of herself and then giving the bulk of the funds to her husband. She was not the mastermind of the scheme, nor did she hold any leadership position in the underlying conduct. Her personal gain was minimal. Lauren is immensely embarrassed by her conduct and feels tremendous guilt for participating in the instant offense.

On February 18, 2022, Lauren self-surrendered. She has been released on bond since that time and has been fully complaint with the terms of her release. See PSR at ¶ 6.

3

On July 12, 2022, Lauren appeared before Your Honor and pleaded guilty to one count of conspiracy to commit wire fraud. Her total offense level is 13 and because she has zero criminal history point, her criminal history category is I. Accordingly, the advisory Guidelines range is 12 – 18 months. See id. at 76.

## II.     ARGUMENT

### A.     The Applicable Legal Standard

Section 3553(a) of Title 18 of the United States Code provides that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes [of sentencing]." 18 U.S.C. §3553(a). As the Court well knows, it has "very wide latitude to decide the proper degree of punishment for an individual offender and a particular crime." United States v. Genao, 869 F.3d 136, 146 (2d Cir. 2017). "The Guidelines are guidelines—that is, they are truly advisory" and "a district court may not presume that a Guidelines sentence is reasonable." United States v. Cavera, 550 F.3d 180, 189 (2d Cir. 2008). After considering all of the §3553(a) factors, the Court should decide whether to "impose . . . a sentence within the applicable Guidelines range or within permissible departure authority," or "to impose a non-Guidelines sentence." United States v. Crosby, 397 F.3d 103, 113 (2d Cir. 2005), abrogated on other grounds by United States v. Fagans, 406 F.3d 138 (2d Cir. 2005). It is thus appropriate for courts to sentence defendants below the Guidelines range when such a sentence satisfies the purposes of 18 U.S.C. § 3553(a).

### B.     The Section 3553(a) Factors

4

In <u>Rita v. United States</u>, the Supreme Court summarized the § 3553(a) factors that a sentencing court should consider: the "(1) offense and offender characteristics; (2) the need for a sentence to reflect the basic aims of sentencing, namely (a) just punishment (retribution), (b) deterrence, (c) incapacitation, (d) rehabilitation; (3) the sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted disparities; and (7) the need for restitution." 551 U.S. 338, 347–48 (2007).

It is a principle of sentencing that courts must consider every "convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." <u>Pepper v. United States</u>, 562 U.S. 476, 487 (2011) (<u>quoting</u> <u>Koon v. United States</u>, 518 U.S. 81, 113 (1996)). "Underlying this tradition is the principle that the punishment should fit the offender and not merely the crime." *Pepper*, 562 U.S. at 487–88 (internal quotations and citation omitted); <u>see</u> <u>also</u> <u>Genao</u>, 869 F.3d at 146; <u>United States v. Jones</u>, 531 F.3d 163, 170 (2d Cir. 2008) (<u>en banc</u>).

Section 3553 (a)(2)(A) provides that the Court should consider the need for the sentence it imposes "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). This section of the Code essentially asks the Court to consider the defendant and his actions holistically, and to "provide just punishment" in light of all the facts known to the Court. <u>Id</u>. There is no question that a sentence of time served or home detention in this case would be sufficient to satisfy all of the goals of sentencing, particularly when combined with the forfeiture obligation that the Court will impose upon Lauren. Such a sentence will certainly promote respect for the law and provide just punishment. <u>Cf</u>. <u>Gall v. United States</u>, 128 S. Ct. 586, 595-96 (2007) (noting a probationary sentence imposes a significant restraint on the liberty of a defendant).

### 1. Lauren's Conduct is Aberrational

The conduct that brings Lauren before the Court is aberrational in nature. She has always led a law-abiding life. She has never been in trouble with the law prior to this incident and she will never have such troubles again.

The fairest view of the circumstances of this case supports the characterization of Lauren's conduct as aberrant in the "uncharacteristic" meaning of the word. See, e.g., United States v. Gupta, 904 F. Supp. 2d 349, 354 (S.D.N.Y. 2012) (finding the "instant offenses were aberrant behavior—not aberrant as defined by the Sentencing Guidelines, but rather as defined by Merriam-Webster: . . . atypical").

Lauren submits the same is true here. She has never engaged in this type of behavior before. Moreover, she was not the mastermind of the instant offense and did not play a leadership role. Lauren, despite the setbacks and difficulties in her life, is a woman who has worked hard to be a good mother to her children and a contributing member of society.

There is no question that this conduct was "atypical" in light of Lauren's history of hard work and accomplishments. Until the instant case, she had an unblemished record. The Court thus should not consider the conduct associated with this case to be the sum total of Lauren's life—it is the Lauren Knox from her childhood through today who the Court should weigh and measure. Accordingly, Ms. Knox respectfully suggests that the Court consider her otherwise unblemished and law-abiding life when fashioning a just and appropriate sentence.

### 2. Lauren Has Exceptional Family Circumstances Warranting a Non-Custodial Sentence

As detailed by Probation, Lauren "is the primary care and financial provider for three minor children" and has another child on the way. PSR at ¶¶ 48, 97. In speaking with her, it became evidence to Probation that Lauren "truly loves being a mother" to her children, ages 17,

15, and ten months. Id. at ¶ 105. She has an extremely close bond with her children. As discussed above, the father to the two older children is not in their life, and the father to her two younger children, is her co-defendant. The significant detrimental impact to the children should Lauren be incarcerated cannot be overstated. Her toddler and unborn child would suffer the most, and of course, they are the most innocent in all of this.

Lauren respectfully requests that the Court consider the undue impact on her young children in imposing a sentence. To be clear this is not a motion for a downward departure under the Guidelines, however, those cases are instructive for why a variant is warranted here. See, e.g., United States v. Galante, 111 F.3d 1029, 1034-5 (2d Cir. 1997) (affirming downward departure where "removal of the father from this unit at this particular point in time would have a disastrous effect on the [8 and 9 year old] children in terms of possibilities of their education and upbringing" and acknowledging "it is the families of defendants that are the intended beneficiaries of downward departures" for family circumstances); United States v. Londono, 76 F.3d 33, 36 (2d Cir. 1996) ("this Court and other courts of appeals have recognized that a defendant's familial responsibilities may present such 'extraordinary circumstances' that a downward departure in sentencing is necessary and permissible"). The reasoning of these cases supports a non-guidelines sentence below the applicable sentencing range, and Lauren respectfully submits that a non-guidelines sentence of home confinement or community service is appropriate so that her toddler and eventual newborn will not suffer the trauma of being separated from their mother for any significant period of time.

### 3. Lauren's Post Offense Conduct Rehabilitation

District courts can take post-offense and/or potential for rehabilitation into account at sentencing, and Lauren respectfully urges the Court to do so here in imposing a sentence of time served or home confinement. "[I]t is well established that a district court should consider a

7

defendant's potential for rehabilitation in determining a sentence." United States v. Wong, 40 F.3d 1347, 1382 (2d Cir. 1994); see also United States v. Barton, 76 F.3d 499, 503 (2d Cir. 1996) ("A court may depart from the applicable guideline range in view of the defendant's efforts toward rehabilitation."). Courts in the Second Circuit have granted substantial leniency based on post-offense rehabilitation. See United States v. Blake, 89 F. Supp. 328, 339 (E.D.N.Y. 2000) (departing 21 offense levels "based upon significant pre-sentence rehabilitation and the probability of continuing steps toward permanent good behavior."). Post-offense and or potential for rehabilitation may also "shed light on the likelihood that . . . [a defendant] will engage in future criminal conduct, a central factor that district courts must assess when imposing sentence." And relevant to this case in particular is Pepper v. United States, where the Supreme Court recognized that the defendant's model compliance with probation conditions, such as her steady employment, "suggest[ed] a diminished need for . . . [further] correctional treatment." 562 U.S. at 492.

Here, Lauren has fully complied with the terms of her pretrial release. She has maintained steady employment and "has made sincere efforts in obtaining additional certifications and education to improve her employment and financial situation, while also raising a family." PSR at ¶ 106.

Lauren requests that the Court consider her efforts at post-offense rehabilitation as it fashions the appropriate sentence in this case.

### 4. Deterrence

As the Court well knows, another factor listed in 18 U.S.C. § 3553(a)(2) is to "afford adequate deterrence from criminal conduct" and "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(B) & (C). The first factor contemplates generally deterring

8

the public from committing crimes similar in nature to those in which the defendant has engaged. The second focuses on deterring the defendant himself from committing future crimes. Lauren submits that both general and specific deterrence have been adequately met in this case.

For a sentence to accomplish general deterrence, it must work as a message to the entire community of potential violators. There is, however, "considerable evidence that even relatively short sentences can have a strong deterrent effect on prospective 'white collar' offenders." United States v. Adelson, 441 F. Supp. 2d, 506, 514 (S.D.N.Y. 2006) (internal citation omitted); see also United States v. Yeaman, 248 F.3d 223, 238 (3d Cir. 2001) (Nygaard, J. dissenting) ("It is widely recognized that the duration of incarceration provides little or no general deterrence for white collar crimes.").

In the instant cases, general deterrence has been satisfied. Lauren has been charged with a crime and has entered a guilty plea. She will have to pay $147,776.10 in restitution. In addition, a criminal felony conviction for conspiracy to commit wire fraud, combined with a period of supervised release, whether inclusive of a period of home confinement or not, will encourage the general public not to participate in similar crimes. There is no further general deterrence achieved by incarcerating Lauren.

As listed above, 18 U.S.C. § 3553(a)(2)(C) focuses on specific deterrence of further criminal conduct by the defendant herself. It requires the Court to consider the need "to protect the public from further crimes of the defendant." Here, there is no need for incarceration to achieve specific deterrence for Lauren. She respectfully submits that her personal history does not show any propensity for further criminal conduct. To the contrary, the instant offense has brought tremendous shame and embarrassment to Lauren, and it suggests that she will never again be involved in criminal conduct. As her mother told Probation, Lauren "knows that her

involvement in the instant offense was wrong" and she has repeatedly apologized for her actions. PSR at ¶ 37.

Lauren further submits that her remorse is complete and the toll that these events have already taken on her personally is significant. She should be permitted to continue making amends by working productively and paying the court ordered restitution. Imprisonment will only prevent that.

As is indicated by the foregoing analysis, the various relevant factors set forth in Title 18 United States Code Section 3553(a)(2) all weigh in favor of a non-incarceratory sentence.

### III. CONCLUSION

For all the foregoing reasons, Lauren Knox respectfully requests that the Court impose a sentence that contemplates a variance from the Guidelines, time served or home confinement, based on her lack of criminal history, the aberrational nature of her conduct, her extraordinary family circumstances, and her post-offense rehabilitation.

Dated: March 3, 2023

                Respectfully submitted,

                /s/ Francis L. O'Reilly

                Francis L. O'Reilly, Esq.
                1735 Post Road, Suite 2C
                Fairfield, CT 06824
                Tell. 203-913-4608
                Attflor@aol.com

                *Attorney for defendant Lauren Knox*

## **CERTIFICATION**

      I hereby certify that a copy of the foregoing motion has been delivered electronically to all counsel of record.

                                             ___/s/Francis L. O'Reilly____